# UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF WASHINGTON
## AT TACOMA

| | | |
|---|---|---|
| ZEINAB ALSAADY and ABRAHAM KAZAN on behalf of themselves and all others similarly situated, | ) | No. 3:26-cv-05708 |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | **CLASS ACTION** |
| | ) | |
| LULULEMON USA, INC., | ) | **DEMANDED JURY TRIAL** |
| | ) | |
| Defendant. | ) | |
| | ) | |

## CLASS ACTION COMPLAINT

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................1

II. PARTIES ...................................................................................................4

    A. Plaintiff Zeinab Alsaady..................................................................4

    B. Plaintiff Abraham Kazan..................................................................6

    C. Defendant Lululemon.......................................................................8

III. JURISDICTION AND VENUE...................................................................9

IV. FACTUAL ALLEGATIONS ....................................................................10

V. CLASS ACTION ALLEGATIONS...........................................................15

COUNT I VIOLATION OF THE WASHINGTON CONSUMER
    PROTECTION ACT (Wash. Rev. Code Ann. § 19.86.010,
    *et seq.*).....................................................................................................20

COUNT II VIOLATION OF THE MICHIGAN CONSUMER
    PROTECTION ACT (Mich. Comp. Laws § 445.901, *et seq.*) ....................22

COUNT III VIOLATIONS OF NEW YORK GENERAL BUSINESS
    LAW § 349 (N.Y. Gen. Bus. Law §§ 349, *et seq.*) ........................................24

COUNT IV UNJUST ENRICHMENT ...................................................................27

COUNT V MONEY HAD AND RECEIVED........................................................28

COUNT VI CONSTRUCTIVE TRUST .................................................................30

VI. PRAYER FOR RELIEF ...........................................................................31

VII. DEMAND FOR JURY TRIAL.................................................................32

011397-11/5034830 V2

Plaintiffs, ZEINAB ALSAADY and ABRAHAM KAZAN ("Plaintiffs"), individually and on behalf of all others similarly situated, by and through their undersigned counsel, brings this Class Action Complaint against Defendant Lululemon USA Inc. ("Lululemon" or "Defendant") and alleges the following:

## I.     INTRODUCTION

1.      The majority of Lululemon's products are manufactured in Vietnam, Cambodia, Sri Lanka, Indonesia, and Bangladesh. Vietnam supplies 40% of Lululemon's products. Each of these countries had tariffs imposed by the Trump Administration as depicted in this poster board Trump held up at a press conference announcing the tariffs.

| Country | Including Currency Manipulation and Trade Barriers | U.S.A. Discounted Reciprocal Tariffs |
|---|---|---|
| China | 67% | 34% |
| European Union | 39% | 20% |
| Vietnam | 90% | 46% |
| Taiwan | 64% | 32% |
| Japan | 46% | 24% |
| India | 52% | 26% |
| South Korea | 50% | 25% |
| Thailand | 72% | 36% |
| Switzerland | 61% | 31% |
| Indonesia | 64% | 32% |

2.      Lululemon collected hundreds of millions of dollars in unlawful tariff costs from Plaintiffs and other consumers by raising prices on imported goods while tariffs imposed by the Trump Administration under the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701 et seq., remained in effect. In other words, in response to the tariffs Lululemon raised the price of its products.

-1-

011397-11/5034830 V2

3.      The Supreme Court in its ruling in *Learning Resources, Inc. v. Trump*, 607 U.S. 229 (2026) invalidated those tariffs. Lululemon is now legally entitled to recover the IEEPA tariffs it paid in full from the federal government and has filed suit in the United States Court of International Trade ("CIT") to recover the IEEPA tariffs they paid. Yet Lululemon has not returned any portion of those recovered funds to the consumers who bore the tariff costs in the first place.

4.      Lululemon's decision to retain both the tariff-related price increases charged to consumers and any tariff refunds it may recover serves its own commercial interests at the direct expense of Plaintiffs and consumers. In short, Lululemon generated and retained a windfall from unlawful government action, and consumers—not Lululemon—are the ones left paying for it.

5.      Plaintiffs and consumers, who bear all or a substantial portion of the tariff burden, lack standing and any statutory cause of action in the Court of International Trade to recover unlawfully collected tariffs. Instead, federal law grants that right exclusively to the importer of record, regardless of who ultimately bore the economic burden. As a result, corporations that passed tariff costs onto consumers remain entitled to recover refunds from the federal government for tariffs later determined to be unlawful, while consumers are left without compensation for the overcharges they paid.

011397-11/5034830 V2

6.    Other companies in Lululemon's position have enacted tariff refund programs to compensate their customers who paid higher prices for products and thus bore the burden of pass-through tariff costs.[1] Lululemon could have enacted a similar refund program for Plaintiffs and members of the Classes yet chose not to.

7.    At minimum, once IEEPA tariff refunds, reliquidation, or other recovery became available, Lululemon's retention of tariff-related amounts paid by consumers became unfair, oppressive, and substantially injurious because Lululemon retained the benefit of both consumer pass-through payments and the corresponding refund rights or proceeds.

8.    Plaintiffs therefore seek a judgment requiring Lululemon to disgorge and return to Plaintiffs and the proposed Classes all unlawful tariff-related overcharges passed through to consumers in the form of increased prices, together with interest.

9.    Plaintiffs and the Classes are entitled to restitution of the tariff overcharges they paid, or a proportionate share of any tariff refunds Lululemon recovers, together with interest, reasonable attorneys' fees, and costs.

---

[1] Jeannette Neumann, Cards Against Humanity to Give Tariff Refunds to Buyers Who "Overpaid," Crain's Chicago Business (Feb. 25, 2026), https://www.chicago business.com/consumer-products/cards-against-humanity-give-tariff-refunds/  (last visited June 30, 2026).

011397-11/5034830 V2

10.     Accordingly, Plaintiffs brings this action individually and on behalf of a nationwide class of similarly situated individuals to seek redress for violations of the Washington Consumer Protection Act ("WCPA"), Wash. Rev. Code Ann. § 19.86.010, and subclasses under the Michigan Consumer Protection Act ("MCPA"), Mich. Comp. Laws § 445.903 *et seq.*, and New York General Business Law ("NYGBL") § 349 as well as common law Unjust Enrichment and Money Had and Received, and for such other relief as the Court may deem just and appropriate.

## II.     PARTIES

### A.     Plaintiff Zeinab Alsaady

11.     Plaintiff Zeinab Alsaady is a resident of the State of Michigan domiciled in Dearborn, Michigan. On May 29, 2025, Plaintiff Alsaady purchased three Lululemon apparel items in an in-store transaction at Lululemon's Somerset South retail location located at 2801 West Big Beaver Road, Troy, Michigan. Specifically, Plaintiff purchased one Dance Studio MR Lined Pant and two Define Cropped Jacket Nulu jackets. The transaction was identified as Transaction No. 1-18010-1-220908-2025-05-30 and totaled $318.95, including applicable taxes. These products were manufactured in Vietnam and were subject to IEEPA tariffs. Plaintiff Alsaady's purchase occurred during the period in which Lululemon publicly acknowledged that it was increasing prices and taking other measures in response to tariffs imposed pursuant to the IEEPA. As a result, Plaintiff Alsaady paid prices that

-4-

were higher than the prices Lululemon charged for the products before the IEEPA tariffs went into effect. Plaintiff Alsaady has been injured by paying more for the products than she would have paid in the absence of Lululemon's act, as set forth herein, and by Lululemon's failure to refund her the tariff-related costs.  As depicted below, the price of these products increased once the tariffs were imposed.



-5-



Lululemon Dance Studio MR Lined Pant

*Light grey shading shows the period after 'Liberation Day' on April 2, 2025*

## B.    Plaintiff Abraham Kazan

12.    Plaintiff Abraham Kazan is a resident of the State of Michigan domiciled in Dearborn, Michigan. On November 4, 2025, Plaintiff Kazan purchased four Lululemon apparel items in an in-store transaction at Lululemon's Soho Broadway retail location in New York, New York. Specifically, Plaintiff purchased one Flow Y Bra A/B, two Dance Studio Mid-Rise Joggers, and one lululemon Align No-Line High-Rise Pant 28". The transaction was identified as Order No. 143887 and totaled $413.05, including applicable taxes. These products were manufactured in a country that was subject to IEEPA tariffs. Plaintiff Kazan's purchase occurred during the period in which Lululemon publicly acknowledged that it was increasing prices and taking other measures in response to tariffs imposed pursuant to the

-6-

011397-11/5034830 V2

IEEPA. As a result, Plaintiff Kazan paid prices that were higher than the prices Lululemon charged for the products before the IEEPA tariffs went into effect. Plaintiff Kazan has been injured by paying more for the products than she would have paid in the absence of Lululemon's act, as set forth herein, and by Lululemon's failure to refund her the tariff-related costs.  As depicted below the price of these products increased once the tariffs were imposed:



-7-



Lululemon Align High-Rise Pant 28"

Light grey shading shows the period after 'Liberation Day' on April 2, 2025

## C.    Defendant Lululemon

13.    Defendant Lululemon USA, Inc. ("Lululemon") is a Canadian retailer of athleisure and athletic wear that conducts business in all 50 states and the District of Columbia. Lululemon is a Nevada corporation and its United States headquarters is located at 2201 140th Ave E., Sumner, Washington 98390 which is in this District. Lululemon regularly conducts and is registered to do business in this District. The decision to not provide refunds to consumers was made in Washington. Lululemon's product descriptions appearing on its websites that contain pricing and product information are designed in Washington and all point-of-sale pricing decisions are made in Washington.

-8-

### III.    JURISDICTION AND VENUE

14.    This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d) because the proposed Class contains more than 100 persons, the aggregate amount in controversy exceeds $5,000,000, and all named Plaintiffs and at least one proposed Class Member are citizens of a state different from Lululemon. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

15.    This Court has personal jurisdiction over Lululemon because its United States headquarters is located in Sumner, Washington, because Lululemon committed the acts alleged herein in Washington, regularly conducts business in this District, and has extensive contacts with this forum.

16.    Lululemon purposefully availed itself of the Washington market, and thus of the benefits of the laws of the State, during all times relevant to this Complaint, so as to render Washington courts' exercise of jurisdiction over Lululemon consistent with traditional notions of fair play and substantial justice.

17.    Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events, omissions, and misrepresentations giving rise to Plaintiffs' claims occurred in this District. Lululemon's headquarters are in this District and Lululemon has marketed, advertised, and made available for sale products subject to IEEPA tariffs within this District.

011397-11/5034830 V2

## IV.    FACTUAL ALLEGATIONS

18.    Lululemon was founded in 1998 in Vancouver, British Columbia, as a retailer of yoga pants and other yoga wear. It has now become one of the largest yoga wear and sportswear brands in the world, with over 750 locations and more than $11 billion in annual revenue.

19.    Beginning on February 1, 2025, President Donald J. Trump issued Executive Orders 14193, 14194, and 14195 imposing duties on certain imports from Canada, Mexico, and China pursuant to the IEEPA. These orders marked the beginning of a series of executive actions imposing tariffs on goods imported from numerous foreign countries and U.S. trading partners. President Trump asserted that the tariffs were authorized under IEEPA and justified by a national emergency.[2]

20.    On February 4, 2025, under the authority of IEEPA, President Trump imposed a 10% tariff on Chinese imports.[3] In March 2025, Trump issued two more executive orders imposing a 25% tariff on goods imported from Canada and Mexico,

---

[2] *See* Exec. Order No. 14193 (Feb. 1, 2025); Exec. Order No. 14194 (Feb. 1, 2025); Exec. Order No. 14195 (Feb. 1, 2025).

[3] Andrea Shalal, *Trump launches trade war with tariffs on Mexico, Canada and China*, Reuters (Feb. 1, 2025), https://www.reuters.com/business/trump-readies-order-steep-tariffs-goods-mexico-canada-china-2025-02-01/ (last visited June 30, 2026).

-10-

respectively.[4] By April 2025, the Trump Administration had imposed tariffs on imports from most other U.S. trading partners.

21.    These tariffs had a substantial financial and supply chain impact on Lululemon, which imports a significant portion of its products from countries subject to the tariffs, including China. Public reporting estimated that tariffs and related import measures would reduce Lululemon's gross profit by approximately $240 million.[5]

22.    Lululemon Chief Financial Officer Meghan Frank announced in June 2025 that Lululemon planned to implement strategic price increases in response to tariffs.[6]

23.    Lululemon Chief Executive Officer Calvin McDonald later confirmed that tariffs would result in consumer price increases during interviews with CNBC in September 2025.[7]

---

[4] *Id.*

[5]  Reuters, *Lululemon shares tumble on weak US demand, tariff woes*, NST (Sep. 5, 2025), https://www.nst.com.my/business/corporate/2025/09/1270807/lululemon-shares-tumble-weak-us-demand-tariff-woes (last visited June 30, 2026).

[6] Cara Salpini, *Lululemon to raise prices as progress stalls in the US,* Retail Drive (June 6, 2025), https://www.retaildive.com/news/lululemon-raise-prices-tariffs-us-consumer-progress-stalls/750068/ (last visited June 30, 2026).

[7] Video, CNBC Television, "Lululemon CEO: There will be some price increases because of tariffs" (Sep. 5, 2025), available at https://www.youtube.com/shorts/osbX1UyEqO0 (last visited June 30, 2026).

011397-11/5034830 V2

24.     Lululemon's internal decision-making to increase prices on Plaintiffs and Class Members because of the tariffs was orchestrated and coordinated in Washington and implemented at a nationwide level. Consumers across the country, whether purchasing online or in-store, were harmed by these increased prices.

25.     Studies by the Federal Reserve Bank of New York find that "U.S. firms and consumers continue to bear the bulk of the economic burden of the high tariffs imposed in 2025."[8] Whereas the imposition of tariffs on foreign trade partners was intended to even international trade deficits, much of the cost of the applicable tariffs was passed on to American consumers who bore the brunt of tariff costs in the form of increased prices.

26.     The higher prices consumers paid were a direct consequence of Lululemon's increased importation costs caused by the IEEPA tariffs.[9] Lululemon publicly acknowledged that tariffs increased its costs and necessitated strategic price increases on consumer products. Absent the imposition of the unlawful IEEPA tariffs, Lululemon would not have needed to raise prices on consumers in this way.

---

[8] Mary Amiti, Chris Flanagan, Sebastian Heise, and David E. Weinstein, *Who is Paying for the 2025 U.S. Tariffs?*, Federal Reserve Bank of New York (Feb. 12, 2026), https://libertystreeteconomics.newyorkfed.org/2026/02/who-is-paying-for-the-2025-u-s-tariffs/ (last visited June 30, 2026).

[9] Ananya Mariam Rajesh, *Lululemon tumbles as slowing demand, tariff costs prompt annual profit cut,* Reuters (June 5, 2025), https://www.reuters.com/business/lululemon-cuts-annual-profit-forecast-demand-slows-tariffs-weigh-2025-06-05/ (last visited June 30, 2026).

-12-

27.    Based on Lululemon's corporate disclosures, the majority of its products are manufactured in Vietnam, Cambodia, Sri Lanka, Indonesia, and Bangladesh, with the majority of fabrics originating from Taiwan, China Mainland, and South Korea. Vietnam is the single largest manufacturing country, accounting for approximately 40% of Lululemon's products in 2024. According to Lululemon's Fair Labor Association assessment, the countries with the highest number of factories are Vietnam (32 factories), China (21), Sri Lanka (10), and Cambodia (10). All of these countries were subject to Trump imposed tariffs.

28.    On December 23, 2025, the CIT issued Administrative Order 25-02 staying all IEEPA tariff cases pending the Supreme Court's resolution of the IEEPA tariffs.

29.    On January 8, 2026, Lululemon commenced an action in the CIT challenging the legality of the IEEPA tariffs. *Lululemon USA Inc. v. United States et al.*, No. 1:26-cv-00465 (Ct. Int'l Trade Jan. 8, 2026). Among other relief, Lululemon requested declarations that the tariff orders were unlawful, an injunction prohibiting further collection of those duties, and an order requiring a refund of the IEEPA tariff duties Lululemon already paid.

30.    On February 20, 2026, the Supreme Court invalidated all IEEPA-based tariffs. *Learning Resources*, 607 U.S. at 255.

011397-11/5034830 V2

31.    President Trump subsequently issued an Executive Order terminating the IEEPA tariffs. The termination of IEEPA tariffs took effect at 12:00 a.m. ET on February 24, 2026.

32.    On March 4, 2026, the Court of International Trade ordered refunds of IEEPA tariffs, holding that "[a]ll importers of record" are "entitled to the benefit" of the Supreme Court ruling that struck down the IEEPA tariffs. *Atmus Filtration, Inc. v. United States*, No. 26-01259, Order at 1 (Ct. Int'l Trade Mar. 4, 2026), ECF No. 21. The Court ordered U.S. Customs and Border Protection to liquidate any and all unliquidated entries subject to IEEPA tariffs "without regard to IEEPA duties," and ordered that "[a]ny liquidated entries for which liquidation is not final shall be reliquidated without regard to IEEPA duties." *Id.* at 2–3.

33.    The U.S. Customs and Border Protection launched the Consolidated Administration and Processing of Entries (CAPE) system on April 20, 2026, as the exclusive mechanism for requesting refunds of duties paid under IEEPA.

34.    According to Brandon Lord, the Executive Director of CBP's Trade Programs Directorate, as of March 4, 2026, the total amount of IEEPA duties and estimated duty deposits collected pursuant to IEEPA is approximately $166 billion. *Atmus*, ECF No. 31 at 6 (March 6, 2026). As a major importer of apparel and athletic

-14-

wear subject to those duties, Lululemon stands to recover a substantial amount of tariff-related payments.[10]

35.    Unless required to provide restitution, Lululemon will likely receive and retain hundreds of millions of dollars in tariff refunds that were ultimately funded by Plaintiffs and consumers through paying higher prices for Lululemon products.

36.    As a direct and proximate result of Lululemon's tariff pass-through pricing, Plaintiffs and Class Members paid more for tariffed goods than they otherwise would have paid absent the unlawful IEEPA tariffs.

## V.    CLASS ACTION ALLEGATIONS

37.    Plaintiffs bring this action individually and on behalf of a proposed nationwide class and statewide class pursuant to Federal Rules of Civil Procedure 23(b)(2) and (b)(3), on behalf of the following proposed Classes:

**Nationwide Class:**
All persons who, while in the United States, purchased from Lululemon products subject to tariffs imposed pursuant to the IEEPA between February 1, 2025, and February 24, 2026.

**Michigan Subclass:**

---

[10] The value of IEEPA tariff refund claims is not merely speculative. Even before the Supreme Court issued its decision in *Learning Resources*, a robust secondary market had emerged in which distressed investors and hedge funds have purchased IEEPA tariff refund claims from importers at a discount in exchange for immediate liquidity. *See* Vito Emanuel, Wall Street Is Betting on Tariff Refunds After Supreme Court Ruling, NPR (Mar. 5, 2026), https://www.npr.org/2026/03/05/nx-s1-5736120/tariff-refunds-wall-street-trade (last visited June 30, 2026).

011397-11/5034830 V2

All persons who, while located in Michigan, purchased from Lululemon products subject to tariffs imposed pursuant to the IEEPA between February 1, 2025, and February 24, 2026.

**New York Subclass:**
All persons who, while located in New York, purchased from Lululemon products subject to tariffs imposed pursuant to the IEEPA between February 1, 2025, and February 24, 2026.

38. Excluded from the Classes are: (a) Defendant; (b) subsidiaries and affiliates of Defendant; (c) parent companies of Defendant; (d) any person or entity who is an officer, director, employee, or controlling person of Defendant; (e) any entity in which Defendant has a controlling interest; (f) the legal representatives, heirs, successors, and assigns of any excluded party; and (g) any judicial officer presiding over this action, the members of his or her immediate family and staff, and any juror assigned to this action.

39. *Numerosity*. The proposed Classes are so numerous that joinder of all members is impracticable. Lululemon operates hundreds of retail locations throughout the United States and conducts substantial direct-to-consumer sales through its online platforms. Upon information and belief, the proposed Class consists of many thousands, if not millions, of consumers who purchased products affected by tariff-related price increases during the Class Period.

40. *Typicality*. Plaintiffs' claims are typical of those asserted on behalf of the proposed Classes. Like all Class Members, Plaintiffs purchased products from Lululemon during the Class Period and allegedly paid prices that reflected the pass-

through of IEEPA tariff costs. Plaintiffs' injuries arise from the same course of conduct, are based on the same legal theories, and seek the same forms of relief as the claims of other Class Members.

41.    *Adequacy*. Plaintiffs will fairly and adequately represent the interests of the proposed Classes. Plaintiffs have no interests that conflict with those of absent Class Members and are committed to vigorously prosecuting this action. Plaintiffs have retained counsel experienced in complex litigation and class-action proceedings.

42.    *Superiority*. Proceeding as a class action is the most efficient and practical method of resolving the claims asserted in this case. The individual damages sustained by many Class Members are relatively modest when compared to the expense and complexity of pursuing separate actions against Lululemon. As a result, absent class treatment, many Class Members would be unlikely to seek relief individually. Moreover, requiring individual lawsuits would create the possibility of thousands of separate proceedings, resulting in unnecessary duplication of effort, increased litigation costs, and potentially inconsistent outcomes. Adjudicating these claims on a class-wide basis will promote judicial economy and provide a fair and efficient mechanism for resolving the controversy. The identities of Class Members can be determined through objective criteria and information maintained in

-17-

Lululemon's records, together with other methods commonly employed in class action litigation.

43.    *Predominance of Common Questions of Law and Fact.* This action presents questions of law and fact common to Plaintiffs and all members of the proposed Classes. The resolution of these common issues will materially advance the litigation and determine the rights of Plaintiffs and Class Members in a manner applicable across the Classes. These common questions predominate over any issues affecting only individual Class Members and include, but are not limited to:

a.    Whether Lululemon paid IEEPA tariffs on products sold to consumers during the Class Period;

b.    Whether the higher prices that consumers paid for Lululemon's products are attributable to the cost of IEEPA tariffs;

c.    Whether Lululemon is obligated to return IEEPA duties to the consumers who paid them in the form of higher prices;

d.    The extent to which tariff-related costs were passed through to consumers;

e.    Whether Lululemon is entitled to retain both tariff-related price increases collected from consumers and tariff refunds recovered from the federal government;

-18-

f.    Whether Lululemon's retention of the unlawful IEEPA Tariffs paid by Plaintiffs and Members of the Classes is unjust, oppressive, unscrupulous, or unfair;

g.    Whether Lululemon's retention of such funds constitutes unjust enrichment or otherwise warrants equitable relief;

h.    Whether Lululemon violated the WCPA, MCPA, and the N.Y. Gen. Bus. Law through its misrepresentations and omissions regarding pricing and tariff pass-through;

i.    Whether Lululemon misled consumers regarding pricing and tariff pass-through;

j.    Whether Lululemon's conduct has harmed Plaintiffs and the Classes uniformly;

k.    Whether Plaintiffs and Class Members suffered a common economic injury;

l.    The measure of damages available to Plaintiffs and the Classes due to increased prices caused by Lululemon's tariff pass-through;

m.    Whether declaratory or injunctive relief is appropriate;

n.    Whether restitution is the appropriate measure of relief, and if so, the appropriate amount; and

o.    Whether the Class Members are entitled to restitution, actual

damages, and attorneys' fees and costs.

44.    *Rule 23(b)(2) Class Certification.* Certification under Rule 23(b)(2) is appropriate because Lululemon has acted on grounds generally applicable to the proposed Classes. Plaintiffs seek declaratory and equitable relief addressing Lululemon's uniform practice of retaining tariff-related payments collected from consumers while preserving its ability to obtain refunds of those same tariff costs from the federal government. Such relief would apply equally to all members of the proposed Classes.

## COUNT I

### VIOLATION OF THE WASHINGTON CONSUMER PROTECTION ACT
**(Wash. Rev. Code Ann. § 19.86.010, *et seq.*)**
**(Brought by Plaintiffs Zeinab Alsaady and Abraham Kazan**
**individually and on behalf of the Nationwide Class)**

45.    Plaintiffs Zeinab Alsaady and Abraham Kazan incorporate by reference all preceding allegations as though fully set forth herein.

46.    Plaintiffs bring this claim individually and on behalf of the proposed Nationwide Class.

47.    The Washington Consumer Protection Act ("WCPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Wash. Rev. Code Ann. § 19.96.020.

-20-

48.     Lululemon's conduct described herein was in the conduct of trade and commerce.

49.     Through its conduct described herein, Lululemon committed unfair, unconscionable, or deceptive methods, acts, or practices that violated the WCPA.

50.     Lululemon has engaged in "unfair" practices by: (1) imposing price increases on Plaintiffs and Class Members to recoup IEEPA-based tariff costs, (2) pursuing and being extremely likely to obtain recovery of those same tariff-related costs from the federal government, and (3) failing to account for, credit, or return to Plaintiffs and Class Members the amounts previously collected if and when Lululemon recovers such amounts through litigation. Lululemon has shifted the economic burden of the IEEPA tariffs to consumers, while retaining for itself the refund rights, credits, reliquidation, or proceeds corresponding to the same tariff costs.

51.     Lululemon's conduct offends public policy because it permits the party that passed a government charge through to consumers to retain the benefit of a later refund of that same charge, while the consumers who bore the economic burden receive nothing.

52.     Lululemon's conduct caused, and continues to cause, substantial injury to Plaintiffs and the Class Members because they paid tariff-related charges and/or

-21-

inflated prices that Lululemon has failed to refund, credit, or reimburse despite Lululemon's ability to recover corresponding tariff-related amounts.

53.    As a direct and proximate result of Lululemon's violations of the WCPA, Plaintiffs and the Class Members suffered ascertainable losses and economic damages in an amount to be proven at trial.

54.    Plaintiffs and Class Members seek all available relief under the WCPA, including actual damages, statutory damages where available, attorneys' fees, costs, injunctive relief, and such other relief as the Court deems just and proper.

## COUNT II

### VIOLATION OF THE MICHIGAN CONSUMER PROTECTION ACT
(Mich. Comp. Laws § 445.901, *et seq.*)
(Brought by Plaintiff Zeinab Alsaady individually and
on behalf of the Michigan Class)

55.    Plaintiff Zeinab Alsaady incorporates by reference all preceding allegations as though fully set forth herein.

56.    Plaintiff brings this claim individually and on behalf of a subclass of consumers in Michigan.

57.    Plaintiff and the Class Members are "person[s]" within the meaning of Mich. Comp. Laws § 445.902(1)(d).

58.    Lululemon is a "person" engaged in "trade or commerce" within the meaning of Mich. Comp. Laws § 445.902(1)(d), (g).

-22-

59.    The MCPA prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce." Mich. Comp. Laws § 445.903(1).

60.    Through its conduct described herein, Lululemon committed unfair, unconscionable, or deceptive methods, acts, or practices that violated the MCPA.

61.    Lululemon has engaged in "unfair" practices by: (1) imposing price increases on Plaintiff and Class Members to recoup IEEPA-based tariff costs, (2) pursuing and being extremely likely to obtain recovery of those same tariff-related costs from the federal government, and (3) failing to account for, credit, or return to Plaintiff and Class Members the amounts previously collected if and when Lululemon recovers such amounts through litigation. Lululemon has shifted the economic burden of the IEEPA tariffs to consumers, while retaining for itself the refund rights, credits, reliquidation, or proceeds corresponding to the same tariff costs.

62.    Lululemon's conduct offends public policy because it permits the party that passed a government charge through to consumers to retain the benefit of a later refund of that same charge, while the consumers who bore the economic burden receive nothing.

63.    Lululemon's conduct caused, and continues to cause, substantial injury to Plaintiff and the Class Members because they paid tariff-related charges and/or

-23-

inflated prices that Lululemon has failed to refund, credit, or reimburse despite Lululemon's ability to recover corresponding tariff-related amounts.

64. As a direct and proximate result of Lululemon's violations of the MCPA, Plaintiff and the Class Members suffered ascertainable losses and economic damages in an amount to be proven at trial.

65. Plaintiff and the Class Members seek all available relief under the MCPA, including actual damages, statutory damages where available, attorneys' fees, costs, injunctive relief, and such other relief as the Court deems just and proper.

## COUNT III

### VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349
### (N.Y. Gen. Bus. Law §§ 349, *et seq.*)
### (Brought by Plaintiff Abraham Kazan individually and
### on behalf of the New York Class)

66. Plaintiff Abraham Kazan incorporates by reference all preceding allegations as though fully set forth herein.

67. Plaintiff brings this claim individually and on behalf of the New York Class.

68. New York General Business Law § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state."

-24-

011397-11/5034830 V2

69.     Lululemon engaged in consumer-oriented conduct by marketing and selling products to consumers throughout New York, including Plaintiff and members of the New York Class.

70.     Through the conduct described herein, Lululemon engaged in deceptive and unfair acts and practices in violation of N.Y. Gen. Bus. Law § 349.

71.     Lululemon has engaged in "unfair" practices by: (1) imposing price increases on Plaintiff and Class Members to recoup IEEPA-based tariff costs, (2) pursuing and being extremely likely to obtain recovery of those same tariff-related costs from the federal government, and (3) failing to account for, credit, or return to Plaintiff and Class Members the amounts previously collected if and when Lululemon recovers such amounts through litigation.

72.     Lululemon's conduct was unfair because it shifted the economic burden of the IEEPA tariffs to consumers while retaining for itself the refund rights, credits, reliquidation benefits, and proceeds associated with those same tariff costs.

73.     Lululemon's conduct was materially misleading because a reasonable consumer would expect that, if tariff-related costs were passed through to consumers and later recovered by Lululemon, Lululemon would not retain both the consumer-paid amounts and the corresponding tariff recoveries.

74.     Lululemon's conduct offends public policy because it permits a retailer to pass government-imposed charges through to consumers and then retain the

-25-

benefit of a subsequent recovery of those same charges, while the consumers who bore the economic burden receive nothing.

75.    Lululemon's conduct caused, and continues to cause, substantial injury to Plaintiff and the Class Members because they paid tariff-related charges and/or inflated prices that Lululemon has failed to refund, credit, or reimburse despite Lululemon's ability to recover corresponding tariff-related amounts.

76.    Plaintiff and members of the New York Class reasonably relied on Lululemon's pricing and purchasing representations and paid prices that were inflated, in whole or in part, by tariff-related costs.

77.    Had Plaintiff and members of the New York Class known that Lululemon would retain the benefit of any subsequent recovery of tariff-related costs without providing corresponding refunds or credits to consumers, they would not have purchased the products at issue or would have paid less for them.

78.    As a direct and proximate result of Lululemon's deceptive and unfair acts and practices, Plaintiff and the New York Class suffered ascertainable losses and actual damages in an amount to be proven at trial.

79.    Plaintiff and the New York Class seek all relief available under N.Y. Gen. Bus. Law § 349, including actual damages, statutory damages where available, attorneys' fees, costs, injunctive relief, and such other relief as the Court deems just and proper.

011397-11/5034830 V2

## COUNT IV

## UNJUST ENRICHMENT
### (Brought by Plaintiffs individually and on behalf of the Nationwide Class or, in the alternative, the State Classes)

80.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

81.    Plaintiffs bring this claim individually and on behalf of the proposed Classes.

82.    Plaintiffs and members of the proposed Classes conferred a benefit upon Lululemon by paying prices that were increased, in whole or in part, to offset costs associated with the IEEPA tariffs. Through those purchases, Plaintiffs and the Classes bore the economic burden of tariff-related costs that Lululemon elected to pass through to consumers.

83.    Lululemon has retained the benefit of those tariff-related payments and stands to obtain additional reimbursement from the federal government through refunds of the same IEEPA duties. As a result, Lululemon has been enriched by amounts paid by Plaintiffs and the Classes and may receive a second recovery for the same tariff costs through governmental refunds.

84.    Under the circumstances alleged herein, it would be inequitable and contrary to principles of justice and good conscience for Lululemon to retain both

-27-

011397-11/5034830 V2

the tariff-related payments collected from consumers and any corresponding tariff refunds recovered from the government.

85.    Equity requires that Lululemon disgorge and make restitution of any tariff-related amounts retained at the expense of Plaintiffs and the proposed Classes. Plaintiffs and the Classes are therefore entitled to restitution, disgorgement, equitable relief, and such other relief as the Court deems appropriate in an amount to be determined at trial.

## COUNT V

### MONEY HAD AND RECEIVED
**(Brought by Plaintiffs individually and on behalf of the Nationwide Class or, in the alternative, the State Classes)**

86.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

87.    Plaintiffs bring this claim individually and on behalf of the proposed Classes.

88.    During the Class Period, Plaintiffs and members of the proposed Classes paid prices for Lululemon products that included amounts attributable to the pass-through of IEEPA tariff costs.

89.    Lululemon received and retained those funds as compensation for tariff expenses incurred in connection with the importation of goods sold to consumers throughout the United States.

-28-

011397-11/5034830 V2

90.   The tariffs that gave rise to those additional charges were subsequently determined to be unlawful. The Supreme Court determined that those tariffs lacked the requisite statutory authorization. As a result, Lululemon became entitled to seek reimbursement of tariff payments previously made to the federal government.

91.   To the extent Lululemon has recovered, or will recover, refunds of IEEPA duties from the government, those refunds correspond to tariff costs that were previously passed through to consumers in the form of higher prices.

92.   Despite retaining the benefit of tariff-related payments collected from consumers and preserving its right to recover those same costs from the government, Lululemon has not returned any portion of those funds to Plaintiffs or members of the proposed Classes.

93.   Under principles of equity and good conscience, Lululemon should not be permitted to retain funds representing tariff costs that were ultimately borne by consumers while simultaneously obtaining reimbursement for those same costs from the government.

94.   Plaintiffs and the proposed Classes are therefore entitled to restitution, disgorgement, and recovery of all amounts wrongfully retained by Lululemon, together with interest and such further relief as the Court deems just and proper.

011397-11/5034830 V2

## COUNT VI

## CONSTRUCTIVE TRUST
**(Brought by Plaintiffs individually and on behalf of the Nationwide Class or, in the alternative, the State Classes)**

95.     Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

96.     Plaintiffs bring this claim individually and on behalf of the proposed Classes.

97.     Lululemon maintains legal title to seek refund of IEEPA tariff costs paid by Plaintiffs and Class Members.

98.     By not returning those costs paid by Plaintiffs and Class Members to them for Lululemon's own financial benefit, Lululemon has taken advantage of Plaintiffs' and Class Members' inability to seek such refunds of illegally collected payments for themselves.

99.     The relationship between Lululemon and Plaintiffs and Class Members is a wholly unequal one.

100.    Because these costs were ultimately paid by Plaintiffs and Class Members, it would be unconscientious for Lululemon to retain the right to seek IEEPA tariff refunds and not refund any amounts collected to Plaintiffs and Class Members. Accordingly, equity requires that the Court establish a constructive trust on Lululemon's right to IEEPA tariff refunds.

-30-

101. The Court has the power to establish such a constructive trust in equity either in the hands of the original wrong-doer, or in the hands of any subsequent holder, until a purchaser of it in good faith and without notice acquires a higher right.

102. Lululemon is currently enjoying the beneficial interest of holding Plaintiffs' and Class Members' property rights, without any compensation to Plaintiffs and Class Members. It is unconscientious for Lululemon to engage in this behavior, and the Court should remedy this inequity by imposing a constructive trust on the IEEPA tariff rights and requiring that those rights be exercised for Plaintiffs and Class Members who paid tariff costs.

## VI.      PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully request that the Court enter judgment in favor of Plaintiffs and the Class and grant the following relief:

A.      Determine that this action may be maintained as a class action under Federal Rule of Civil Procedure 23 and certify the proposed Classes;

B.      Appoint Plaintiff(s) as Class Representative and Plaintiffs' counsel as Class Counsel;

C.      Establishment of a constructive trust with regard to any IEEPA tariff refunds to which Lululemon would be entitled to seek pursuant to the United States Supreme Court's decision in *Learning Resources Inc. v. Trump*, 607 U.S. 229

011397-11/5034830 V2

(2026), and a declaration that those rights be exercised and resulting funds be held for the benefit of Plaintiffs and Class Members;

D.      A declaration that Plaintiffs and Class Members are entitled to a return of the IEEPA funds they paid to cover an IEEPA tariff surcharge.

E.      An injunction enjoining Lululemon from continuing to engage in the unlawful, deceptive, and unfair business practices alleged herein and requiring Lululemon to seek refunds of all tariff payments it made that have been deemed illegal by the United States Supreme Court, and requiring Lululemon to return those refund amounts to the consumers who purchased the goods on which tariffs were levied.

F.      Award Plaintiffs and the Classes restitution, disgorgement, damages, and/or other monetary relief in an amount to be determined at trial;

G.      Award prejudgment and post-judgment interest as permitted by law;

H.      Award Plaintiffs and the Classes their reasonable attorneys' fees, costs, and expenses to the fullest extent permitted by law; and

I.      Grant such other and further legal, equitable, and declaratory relief as the Court deems just and proper.

## VII.  DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on any and all issues raised in this Complaint so triable as of right.

-32-

011397-11/5034830 V2

Dated: June 30, 2026

Respectfully submitted,

**HAGENS BERMAN SOBOL SHAPIRO LLP**

By: /s/ *Steve W. Berman*
      Steve W. Berman (SBN 12536)
Dana Abelson (SBN 63278)
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
steve@hbsslaw.com
dana.abelson@hbsslaw.com

Christopher R. Pitoun (*pro hac vice*
forthcoming)
**HAGENS BERMAN SOBL SHAPIRO LLP**
301 North Lake Avenue, Suite 920
Pasadena, CA 91101
christopherp@hbsslaw.com

E. Powell Miller (*pro hac vice* forthcoming)
Dennis A. Lienhardt (*pro hac vice*
forthcoming)
**THE MILLER LAW FIRM P.C.**
950 West University Drive, Suite 300
Rochester, MI 48307
(248) 609-3733
epm@millerlawpc.com
dal@millerlawpc.com

*Counsel for Plaintiffs and the Proposed
Classes*

-33-